# PAOLUCCI v. UNITED STATES.*

NEW TRIALS; OPINION OF COURT; DISCRETION; AFFIDAVITS; MISCONDUCT
    OF JURYMAN; CHALLENGES.

1. In the courts of the United States, the general rule is well established
   that the action of a trial court in denying a motion for a new trial
   is not reviewable on appeal. (Following *West* v. *United States*, 20
   App. D. C. 347, and citing *Kelly* v. *Moore*, 22 App. D. C. 9.)

2. Broad expressions in the opinion of an appellate court are to be taken
   in the light of the facts of the case decided.

3. It is not necessarily an abuse of discretion on the part of the trial
   court, subjecting its action to review on appeal and requiring reversal,
   where the court on a motion for a new trial refuses to give effect to
   charges of misconduct in the trial, when supported by affidavit and
   uncontradicted.

4. Denial of a motion for a new trial by the accused in a *murder case*,
   after a verdict of guilty, is not an abuse of the trial court's discre-
   tion justifying a reversal, although the motion is supported by un-
   contradicted affidavits of the wife of one of the jurymen and an-
   other person, showing declarations of animosity on the part of the
   juryman towards the nationality to which the accused belonged, ex-
   isting many months before the trial, where there is nothing to show that
   the juryman was prejudiced against the accused as an individual, and
   he stated on his *voir dire* that he had no prejudice against persons
   of the nationality in question. Under such circumstances, however,
   it would be safer practice to call upon the juryman for an express
   denial of the charge, and probably, also, to examine the affiants as
   to the specific time, place, and occasion of the declarations.

5. Sec. 919, Code, D. C., providing that no verdict shall be set aside
   for any cause which might have been assigned as ground for a chal-
   lenge of a juror before the jury was sworn, except when the *objection*
   to the juror is that he had a bias against the defendant such as would
   have disqualified him, and such disqualification was not known to or

---

*New trial.*—As to disqualification of juror as ground for new trial, see
note to *Jewell* v. *Jewell*, 18 L.R.A. 473.

suspected by the defendant or his counsel before the juror was sworn,—gives a defendant no new right, and does not affect the discretionary power of the trial court to grant or refuse a motion for a new trial based upon the alleged disqualification of a juror for bias.

No. 1832.   Submitted November 19, 1907.   Decided December 11, 1907.

HEARING on an appeal by the accused from a judgment of conviction of the Supreme Court of the District of Columbia holding a criminal court, upon a verdict of guilty of murder in the first degree.                                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

By indictment presented November 26, 1906, the appellant, Joseph Paolucci, was charged with the murder of Elizabeth V. Dodge.   His trial resulted in a verdict of guilty of murder in the first degree on March 8, 1907.

The evidence tended to show that the defendant had been a suitor of Miss Dodge, and that his suit had been rejected by her. It further showed that about 2 o'clock in the afternoon of September 13, 1906, Miss Dodge was returning from a nearby house, from which she and her mother were preparing to remove, and the door of which she had gone to lock, to her mother's confectionary shop, when the defendant met her and fired three shots into her body from a 32-calibre revolver.   She fell dead in the street, and defendant then fired one shot into his own body. No exception was taken to any action of the court throughout the entire proceedings on the trial.

An amended motion for new trial was filed under leave of the court some days after the return of the verdict.   This motion was founded on two affidavits filed April 19, 1907.   One of the affiants, Francis M. Shelton, stated that he was well acquainted with Alfred J. Birmingham, who was a juror in the case, and had heard him express strong feelings of enmity against the Italian people during the summer of 1906, and heard him say that "every d——d Italian ought to be driven out of the country or hanged."

The other affiant, Kate A. Birmingham, stated that her husband, Alfred J. Birmingham, has for years entertained strong feelings of prejudice against foreigners generally, and especially against Italians; and that as late as September, 1906, she had heard him say, in substance and effect, that every Italian ought to be driven out of the country or hanged. Her affidavit concludes as follows: "Considerations of duty, good conscience, and simple justice prompt me to state these facts in behalf of the said Paolucci, whom public sentiment largely adjudges to have been love-crazed at the time of the alleged homicide."

The affidavit of appellant in support of his motion to set aside the verdict on account of the prejudice of the said juror stated that he was a subject of the King of Italy; that he had not heard before the empaneling of the jury, and had no reason to suspect, that said juror entertained any bias or prejudice against the Italian people, until after the return of the verdict and the expiration of the term limited for filing a motion for new trial; nor had his attorneys any knowledge of the fact. No counter-affidavits were filed, but it appears that it was admitted on the hearing of the motion that the affiant, Kate Birmingham, was the estranged wife of the juror. The record shows also that, when the juror was called during the formation of the jury, he had been examined under oath touching his qualifications. The following questions were propounded to him at that time: "Have you any business relations with Italians?" "You have no prejudice against that nationality?" "You have no prejudice against a man because he is a Catholic, have you," To each of these questions he answered, "No." This further question was then asked: "Take the case of a young man disappointed in love, who gives way to his emotions; have you any prejudice against a man of that kind?" He answered: "No, sir; I would certainly sympathize with him." It does not appear whether these questions were asked on behalf of the government or the defendant. The juror was then accepted and the trial proceeded.

The court entertained the motion and heard argument thereon. Some days thereafter, on May 10, 1907, the motion was denied, the verdict approved, and final judgment entered sen-

tencing the defendant to be hanged. From this action the appeal has been prosecuted.

*Mr. Wilton J. Lambert, Mr. Thomas C. Taylor,* and *Mr. Rudolph H. Yeatman,* for the appellant.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. Stuart McNamara,* Assistant, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

In the courts of the United States the general rule is well established that the action of a trial court in refusing a motion for a new trial is not the subject of review in an appellate court. *Blitz* v. *United States,* 153 U. S. 308, 312, 38 L. ed. 725, 726, 14 Sup. Ct. Rep. 924, *Smith* v. *Mississippi,* 162 U. S. 592, 601, 40 L. ed. 1082, 1085, 16 Sup. Ct. Rep. 900; *Addington* v. *United States,* 165 U. S. 184, 185, 41 L. ed. 679, 17 Sup. Ct. Rep. 288; *West* v. *United States,* 20 App. D. C. 347, 351.

In *Kelly* v. *Moore,* 22 App. D. C. 9, 29, it was said: "There are or may be exceptions to the rule, and among these exceptions are some cases of misconduct on the part of the jury and others connected with the jury, which the trial court has refused to consider, or has erroneously considered upon an uncontested state of facts." For this statement of exceptions to the general rule there is cited, among others, the case of *Mattox* v. *United States,* 146 U. S. 140, 147, 36 L. ed. 917, 920, 13 Sup. Ct. Rep. 50. In *Kelly* v. *Moore,* an attempt had been made to show gross misconduct by one of the jurors during the trial, namely, intoxication; and some other charges were made. The trial justice not only entertained the charges, but heard evidence in support and denial of the same; after which he denied the motion. In such case, it is said, an appellate court should not interfere with his conclusion. In *Mattox* v. *United States, supra,* affidavits were offered in support of a motion for new trial, based on the

misconduct of the jury and the officers in attendance upon them. The charge was made that these officers made prejudicial statements to the jury, among them, that this was the third man the defendant had killed. It was also shown that a local newspaper, after submission of the case to the jury, published an account of the trial, denouncing the defendant as guilty, and stating the expectation of the public that he would be so found by the jury, which had consumed some time in the consideration of the case. This article was read in the presence and hearing of the jury. The affidavits and a copy of the article were offered in support of the motion for new trial, but the court refused to receive or consider them. This was held to be error. After commenting on the facts and reviewing cases relating to the question of extraneous influences brought to bear upon jurors in consideration of a case, Mr. Chief Justice Fuller, who delivered the opinion of the court, said: "We should therefore be compelled to reverse the judgment because the affidavits were not received and considered by the court; but another ground exists upon which we must not only do this, but direct a new trial to be granted." Here there was a case of outrageous misconduct concerning which the court could have no possible knowledge save through the affidavits in support of the charges, and yet he refused to hear the charges, and gave them no consideration whatever. And in this extreme case, had there been no error in exclusion of competent evidence on the trial, the court would merely have reversed the judgment without directing a new trial, and remanded the cause for inquiry into and consideration of the facts alleged in support of the motion for new trial.

The conditions of the case under consideration are quite different from those. In the first place, the affidavits related not to facts occurring during the trial, but to general statements of a juror, made months before the trial and having no reference thereto, indicating a general prejudice against all Italians. There was nothing tending to show or to raise an inference that the juror knew or had ever heard of the defendant, much less to show that he had any prejudice against him in particular. In the second place, the trial justice did not refuse to entertain

the motion and supporting affidavits, but gave counsel a hearing in support of them. He had heard the examination of the juror on his *voir dire,* had conducted the trial from beginning to end in such a manner that no exception had been taken to any one of his rulings, or the charge, and in the exercise of his discretion refused to set aside the verdict.

It is contended that the facts alleged in the affidavits showed plainly that the defendant had not had the benefit of trial by a fair and impartial jury that is guaranteed to all persons by the Constitution; that these facts, having been undenied, must be accepted as true; and that the action of the court in refusing to give effect to them by granting the motion was equivalent to a refusal to entertain them at all.

The argument in support of this contention is founded on the expression heretofore quoted from *Kelly* v. *Moore, supra,* which enumerates, among the exceptions to the rule, not only those charges of misconduct of the jury which the trial court has refused to consider, but those which he "has erroneously considered upon an uncontested state of facts."

Broad expressions in an opinion are to be taken in the light of the facts of the case in which they were delivered. None of the cases on which that expression was founded go to the length of the contention. None go further than *Mattox* v. *United States, supra,* which has heretofore been stated fully. The misconduct charged in *Kelly* v. *Moore* was, as stated, such as tended to "pollute and poison the fountains of justice, which should be rigidly guarded from contamination;" moreover, the facts, of which the trial court could have had no other knowledge than by proof, were so circumstantially and directly stated under oath that to refuse them effect without any denial might well be regarded as equivalent to refusal to consider them at all. No doubt, many cases of the kind might occur in which the refusal of the court to give effect to charges of misconduct in the trial, when supported by affidavit and uncontradicted, would amount to such a manifest abuse of discretion as to subject his action to review and require its reversal. But the conclusion that this

must be done in every case where there has been no express contradiction of the supporting affidavits is unwarranted.

Recurring now to the facts of the present case: As has been seen, the charge against the juror was that of a general prejudice against all Italians, made in a loose, general way months before he was called upon to assume the duties of a juryman. He had no knowledge of the defendant, and it is not pretended that he entertained any prejudice against him as an individual. Had he admitted upon his *voir dire* that he had formerly entertained and expressed a prejudice against all Italians, but at the same time said he had none such then, and that he was able to consider the case of the defendant fairly, and render an impartial verdict therein, it would hardly be contended that he could have been challenged for cause. Assuming, however, that general expressions, by an American citizen, of prejudice against the people of any other nation or race, made in general conversation and not in contemplation of the performance of his sworn duty as a juryman to sit in the trial of a member of such race, would, if unexplained or not disclaimed, render him incompetent, it is sufficient to say that no such case is here presented.

Under the facts of the case, we do not consider that the trial justice was bound to call for evidence disputing the facts alleged, or else grant the motion. The charges of two persons that the juror had expressed his prejudice to them specified no time, place, or occasion of their utterance. Their contradiction by any other person than the juror himself was plainly impracticable. Affidavits of other persons that they had never heard the juror express such sentiments, or that he had been heard by them frequently to declare his admiration of the Italian people, would not traverse the charges. The trial justice had heard the juror, when called for service long after the time of the alleged unsworn declarations, make the statement under oath, in answer to direct questions, that he then, at least, entertained no prejudice against the Italian people. Having had the opportunity to observe the demeanor of the juror at the time, he, in the exercise of his discretion, considered it unnecessary to call him for further examination. Although in the case of general affidavits

such as those under consideration,which admit of no direct denial save by the person under accusation, and therefore, if false, could ordinarily be made without fear of conviction of perjury, it would be the safer practice to call upon the impeached juror for an express denial of the particular charge, and probably also to examine the affiants as to the specific time, place, and occasion of the alleged declarations, yet we cannot say that the failure of the court to pursue this practice, under all the circumstances of the case, amounted to an abuse of discretion.

A further contention is founded on sec. 919 of the Code [31 Stat. at L. 1338, chap. 854], which reads as follows: "Cause of Challenge Not Available after Verdict.—No verdict shall be set aside for any cause which might be alleged as ground for challenge of a juror before the jury are sworn, except when the objection to the juror is that he had a bias against the defendant such as would have disqualified him, and such disqualification was not known to or suspected by the defendant or his counsel before the juror was sworn." This section, it has been argued, gives the defendant a right to a new trial, the denial of which is therefore reviewable on appeal, the same as any other question of law arising on exception reserved during the trial.

We do not so interpret the meaning and intent of the provision. It gives no new right to the defendant, and adds nothing to the discretionary powers which the courts have always exercised in such cases. If not declaratory merely of a long-existing rule of practice, it would seem rather a limitation, than otherwise, of the ordinary discretionary power of the courts to grant new trials.

Unable to find that there was any abuse of discretion in denying the motion for new trial, which would justify its reversal, the judgment will be affirmed. It is so ordered.     *Affirmed.*

On March 3, 1908, the Supreme Court of the United States denied an application made by the appellant for the writ of certiorari.